hBYRNES, Judge.
On December 2, 1982, the appellant was charged with possession with the intent to distribute pentazocine. At her arraignment on December 13th she pled not guilty. There is some indication that trial was begun on March 24, 1983 and continued to the next day, but apparently a mistrial was granted at that trial because there is no docket master entry for March 25th. On June 16, 1983, at the end of a two-day trial, she was convicted of simple possession of pentazocine. Her motion for post verdict judgment of acquittal was denied on July 6th, and she was sentenced on August 2, 1983 to serve five years at hard labor. On August 5th, the trial court granted her appeal and set an appeal bond. The State filed a multiple bill against her on August 8th, to which she later pled not guilty.
On September 19, 1983, the court found her to be a second offender, vacated her original sentence, sentenced her to serve ten years at hard labor, and remanded. But the appellant escaped from custody the next day and remained at large until September, 1991, when the State learned that the appellant was on probation in ^Georgia. In October, 1993 she was transferred to the Orleans Parish Prison. On December 1,1993, the appellant filed a motion for the lodging of her appeal record, and on December 21st she filed a motion to amend sentence. On January 1, 1994, her motion to reduce bond was denied. On February 8th, she withdrew her motion to amend sentence and instead orally moved for a new trial based upon newly-discovered evidence of her innocence. The court denied the motion to amend the sentence and gave the defense time in which to file a formal motion for new trial. The matter was continued numerous times, and there is no indication that the trial court ever ruled on the motion.
On February 2, 1995, a court reporter for Section “A” submitted a certification that the “necessary transcripts”, which included the trial transcript, were unavailable because the notes and tapes had been lost. The record was lodged in this court on April 18, 1995. On December 14, 1995, February 12, 1996, and March 11, 1996, this court received supplemental transcripts and a certification in this case. An additional certification concerning the unavailability of transcripts was filed on April 17th.
Because the trial transcript is unavailable the facts of this case are unknown.

jErrors Patent

A review of the record for errors patent reveals that the minute entries for trial are missing, both from the appeal record and from the district court record. The docket master contains two entries for the dates of trial, but it is unclear from those entries how many jurors were present at trial. As noted above, because this conviction is so old, the notes of trial have been lost. Thus, it is impossible to determine from the record if the proper number of jurors were present and whether the requisite number of jurors concurred in the verdict. However, there is no Igindication in the docket master entries for trial that the appellant objected to the number of jurors chosen for trial or to the composition of the jury’s verdict. In light of the failure of the appellant to object it is reasonable to assume that the requisite number of jurors was present and voted in favor of the conviction. We find no cases to the contrary. Moreover, in view of the failure of the defendant to object this Court would view the existence of any such possible error (and we stress the word “possible”) as harmless. As noted by the Court in State v. Charles, 450 So.2d 1287, 1291 (La.1984): “Not all errors discoverable on the face of pleadings are reversible errors.”
There were no other errors patent or “possible” errors patent.

The First Assignment of Error Pro Se and Counsel’s Fourth

By her first pro se assignment of error and by counsel’s fourth assignment, the defendant contends that her constitutional right to appeal has been denied because the trial transcript is unavailable. This Court finds no merit in these assignments of error.
Between the time defendant was granted an appeal after her original sentencing in 1983 and after being adjudicated and sen *1255 tenced as a multiple offender, she escaped and was absent from Louisiana until 1993, when she was returned from Georgia. In the interim, the notes for her trial as well as those for her original sentencing and the multiple bill hearing and sentencing were lost. Defendant argues that the fact that she escaped years ago should not have stopped her appeal from proceeding after it was granted in 1982. She contends that her ten-year absence from Louisiana following her escape should not be blamed for the loss of the notes of trial.
La. Const, art. I, § 19 provides:
J4N0 person shall be subjected to imprisonment or forfeiture of rights or property without the right of review based upon a complete record of all evidence upon which the judgment is based. This right may be intelligently waived. The cost of transcribing the record shall be paid as provided by law.
In State v. Ford, 338 So.2d 107 (La.1976), portions of the trial transcript were missing from the appeal record because the court reporter for some unknown reason did not record those portions. Appellate counsel had not represented the defendant at trial. The Court reversed the defendant’s conviction and sentence, quoting from United States v. Atilus, 425 F.2d 816 (5th Cir.1970):
“[tjhrough no fault of the defendant a transcript of the trial proceedings is no longer available. Under these circumstances this court has no choice but to reverse the conviction. The Supreme Court has made it clear beyond question that a criminal defendant has a right to a complete transcript of the trial proceedings, particularly where, as here, counsel on appeal was not counsel at the trial. Hardy v. United States, 1964, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331.”
State v. Ford, 338 So.2d at 109.
Likewise, in State v. Jones, 351 So.2d 1194 (La.1977), and State v. Bizette, 334 So.2d 392 (La.1976), the Court reversed the defendants’ convictions where portions of the defendants’ trials were not recorded due to malfunctions of the recording system. In each instance, the Court noted that the unavailability of the transcripts could not be attributed to the defendant.
However, courts have affirmed defendants’ convictions where the trial transcripts are unavailable due to the long passage of time between the convictions and the defendants’ active assertion of his right to appeal and said long passage of time was attributable to the defendant. In State v. Bernard, 583 So.2d 111 (La.App. 5th Cir.1991), writ den. 586 So.2d 540 (La.1991), the defendant waited seven years to move for an appeal of his conviction, and by that time the trial |stranscript was unavailable. The Fifth Circuit rejected the defendant’s claim that his right to a meaningful appeal had been denied, noting:
We do not believe appellant should benefit from his inaction from 1983 to 1990, particularly in the absence of any statutory violation regarding the keeping of records and in the total absence of any showing (or even suggestion) of bad faith by either court reporter or the prosecution. We are unaware of any state or federal statute or jurisprudence from Louisiana or elsewhere indicating that records should be preserved for six years or longer.
When Bernard’s request for an out-of-time appeal was granted, it was no doubt assumed that a trial transcript could somehow, [sic] belatedly be prepared. This assumption was inadvertent and certainly regrettable. Justice is far better served, considering all facts and circumstances of this case, by the denial of Bernard’s dilatory and lethargic attempt at judicial review than by the voiding of these serious convictions.
State v. Bernard, 583 So.2d at 112. Likewise, in State v. Clark, 93-0321 (La.App. 4th Cir. 10/27/94), 644 So.2d 1130, writ den. 94-2884 (La.3/24/95), 651 So.2d 287, the defendant withdrew his motion for appeal filed soon after his conviction, noting he might appeal in the future. Nine years later, after successive writ applications on various issues, his out-of-time appeal was granted. By that time the trial transcript was unavailable. This court refused to reverse his conviction, noting the defendant’s dismissal of his original appeal and that fact that the minute *1256 entry of trial did not indicate that any objections were lodged during trial, and thus possibly no errors were preserved for appellate review.
In State v. Ford, 92-2029 (La.App. 4th Cir. 1/31/95), 650 So.2d 808, the defendant was convicted and granted an appeal in 1980; however, the appeal record was never lodged in the Supreme Court, a fact of which he was informed in 1984. In 1991 he filed an application seeking his appeal. The trial court “reinstated” the appeal, and by that time the trial transcript was unavailable. This Court rejected the | ^defendant's claim that his right to a meaningful appeal was violated, noting that the defendant did not complain about the lack of appeal until eleven years after his appeal was granted and seven years after he was informed his appeal had not been filed. This Court also pointed to the lack of objections noted in the minute entries of trial, surmising that it was unlikely that any issues were preserved for appeal.
Defendant makes much of the fact that in Ford the defendant’s inaction occurred subsequent to having been notified that the record had not been lodged. However, this Court is of the opinion that the defendants absence due to escape in the instant ease would have rendered any attempt to notify her pointless. Defendant’s long absence by reason of escape thereby making it impossible to notify her during the period of her absence can be considered a waiver of such notice. Defendant cannot be allowed to complain of a lack of notice when she made such notice impossible by virtue of her illegal escape.
In the instant case the defendant’s appeal was granted before she escaped. For some unknown reason the appeal was not lodged in this Court after her escape. The failure of the defendant to follow up on the trial court’s preparation and transmittal of the transcript and appellate record during the years of her escape brings this case within the ambit of the reasoning found in Clark, Bernard, and the later Ford where the defendants were not innocent of the absence and consequent inattention to their appeals. For the same reason there is no kinship between the instant case and Jones, Bizette, and the earlier Ford where there were no findings of absence and inattention for which the defendant should be held accountable.
The appellant argues, however, that the fact that she escaped should have had no effect on her appeal being prepared and considered in 1983. State v. Falcone, 383 So.2d 1243 (La.1980), where the Court held that a defendant’s appeal cannot be dismissed just because a defendant is at large is distinguishable. Likewise, State v. Simmons, 390 So.2d 504 (La.1980) and State v. Marcell, 320 So.2d 195 (La.1975), wherein the Court stated that the right to an appeal is personal to a defendant and that any waiver of this right must be made by the defendant are also distinguishable The appellant contends that because she did not specifically waive her right to appeal, the appeal should have proceeded even in her absence.
That defendant’s appeal would have moved much more quickly if the appellant had not escaped is borne out by the fact that within two months after defendant was returned to custody she moved for the lodging of her appeal. Defendant’s absence for a prolonged and consequent acquiescence in the trial court’s failure to lodge her appeal resulted in the loss of records essential to her appeal. As this absence was attributable to defendant’s escape the consequences of that absence, i.e., the loss of records and transcripts over time, must fall on her shoulders.
This Court merely holds defendant accountable for the loss of trial records that occurred over the protracted period of her inexcusable absence from Louisiana. It is not necessary that we impose the legally far more draconian penalty of dismissing defendant’s appeal which the United States Supreme Court has recognized in Ortega-Rodriguez v. United States, 507 U.S. 234, 242, 113 S.Ct. 1199, 1204, 122 L.Ed.2d 581 (1993), as an appropriate way to uphold our legal system in the face of the challenge to law and order posed by escape:
... our cases consistently and unequivocally approve dismissal as an appropriate sanction when a prisoner is a fugitive during “the ongoing appellate process.” Moreover, this rule is amply supported by *1257 a number of justifications. In addition to addressing the enforceability concerns identified in Smith v. United States, 94 U.S. 97, 24 L.Ed. 32 (1876), and Bohanan v. Nebraska, 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854 (1887), dismissal by an appellate court after a defendant has fled its jurisdiction serves an important deterrent function and advances an interest in efficient, dignified appellate practice. Estelle [v. Dorrough], 420 U.S. [534], at 537, 95 S.Ct. [1173], at 1175 [43 L.Ed.2d 377] [ (1975) ].
IgThe Court further stated:
It is often said that a fugitive “flouts” the authority of the court by escaping, and that dismissal is an appropriate sanction for this act of disrespect. [Citations omitted] Indeed, the premise of [Molinaro v. New Jersey, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970) ]’s disentitlement theory is that “the fugitive from justice has demonstrated such disrespect for the legal processes that he has no right to call upon the court to adjudicate his claim.” Ali v. Sims, 788 F.2d [954], at 959 [(3rd Cir.1986) ]; see Molinaro, 396 U.S., at 366, 90 S.Ct., at 498-499. We have no reason here to question the proposition an appellate court may employ dismissal as a sanction when a defendant’s flight operates as an affront to the dignity of the court’s proceedings.
Ortega-Rodriguez v. United States, 507 U.S. at 245-246, 113 S.Ct. at 1206-1207.
The failure of this Court to follow Ortegar-Rodriguez in the instant case does not foreclose the possibility of following it at some future date should circumstances so warrant.

Defendant and Counsel’s Second Assignment of Error

By the second assignments of both counsel and the appellant pro se, the sufficiency of evidence to support the appellant’s conviction is questioned. The appellant was charged with possession with the intent to distribute pentazocine, but the jury found her guilty of simple possession of pentazocine. However, the trial transcript is not available for this court’s review, making the review of this issue impossible. Thus, the real question once again is what effect is this Court to give to the missing transcripts, which question we have already answered adversely to the defendant.

Pro Se and Counsel’s Third Assignment of Error

By both counsel and the pro se’s third assignments of error, the appellant attacks the validity of her multiple offender conviction. Counsel argues that the trial |9court was without jurisdiction to adjudicate and sentence the appellant as a multiple offender because her appeal had already been granted. The appellant pro se argues that her counsel was ineffective because he should have objected to the trial court’s jurisdiction over the ease once the appeal was granted.
With respect to the ineffective assistance of counsel claim, in State v. Lavigne, 95-0204 pp. 13-14 (La.App. 4th Cir. 5/22/96), 675 So.2d 771, 779-780, this court stated:
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4th Cir.1986); State v. Landry, 499 So.2d 1320 (La.App. 4th Cir.1986).
The defendant’s claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel’s performance was deficient and that the deficiency prejudiced the defendant. Counsel’s performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defen *1258 dant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel’s deficient performance mil have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, supra at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to 1 iprequire reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4th Cir.1992).
Both counsel and the appellant pro se argue that the trial court was without jurisdiction to hear the multiple bill because the motion for appeal had been granted. At the time the appeal was granted, LSA — C.Cr.P. art. 916 provided:
The jurisdiction of the trial court is divested and that of the appellate court attaches, upon the entering of the order of appeal. Thereafter, the trial court has no jurisdiction over the matter except to:
(1) Extend the return day of the appeal, the time for filing assignments of error, or the time for filing per curiam comments;
(2) Correct an error or deficiency in the record;
(3) Correct an illegal sentence, or reduce a legal sentence in accordance with Article 913(B);
(4) Take all action concerning bail permitted by Title VIII;
(6) Receive assignments of error and add per curiam comments; and
(6) Render an interlocutory order or a definitive judgment concerning a ministerial matter not in controversy on appeal.
However, by Acts 1986, No. 851, art. 916 was amended to add jurisdiction to “[sjentence the defendant pursuant to a conviction under the Habitual Offender Law as set forth in R.S. 15:529.1.” In State v. Abbott, 508 So.2d 80, 81 (La.1987), the Court stated: “... Louisiana Act 851 of 1986 should be applied retroactively to uphold the validity of habitual offender proceedings where orders of appeal were entered prior to the sentencing of the defendants as habitual offenders.” See also State v. Camp, 517 So.2d 1202 (La.App. 4th Cir.1987).[1]
| nAlthough the trial court did not have jurisdiction to sentence the appellant as a multiple offender at the time of the multiple offender hearing, the appellant cannot now show prejudice from counsel’s failure to object at that time because the amendment to art. 916 is to be applied retroactively. Even if counsel had objected, the fact remains that her appeal was not heard until after Abbott mandated that the amendment of art. 916 be applied retroactively. In addition, even if this court were to find that the trial court lacked jurisdiction to sentence the appellant as a multiple offender when it did so and it vacated the multiple bill adjudication and sentence, the State could file a new bill against her. Contrary to counsel’s assertions, the portion of the delay between the first multiple bill adjudication and any subsequent filing of a new bill caused by the twelve-and-one-half-year pendency of the appeal could not be attributed to the State. Thus, the appellant cannot show prejudice, and her claim of ineffective assistance of counsel fails. These assignments have no merit.

Counsel’s First Assignment of Error

Counsel’s first assignment contends that the trial court imposed an excessive sentence. The appellant was convicted of simple possession of pentazocine, and as a second offender she received a ten-year sentence, the maximum sentence she could have received at that time. La. R.S. 40:967; 15:529.1.
*1259 As noted by this court in State v. Bowman, 95-0667, pp. 14-15 (La.App. 4th Cir. 7/10/96), 677 So.2d 1094, 1101-1102:
Article I, § 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence may be reviewed for excessiveness even though it is well within statutory guidelines. La.C.Cr.P. art. 881.2; State v. Cann, 471 So,2d 701 (La.1985), State v. Clements, 94r-2217 (La.App. 4 Cir. 11/16/95), 665 So.2d 137. The imposition of a sentence may be unconstitutionally excessive if it is grossly out of proportion to the severity of the crime or is nothing more hathan the purposeless imposition of pain and suffering. State v. Brogdon, 457 So.2d 616 (La.1984), certiorari denied, Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2845, 85 L.Ed.2d 862 (1985). To insure adequate review by the appellate court, the record must indicate that the trial court considered factors set forth in the sentencing guidelines. La. C.Cr.P. art. 894.1.
Here, the appellant received the maximum sentence provided at that time as a second offender for possession of pentazocine. Now the transcripts of the original sentencing and the sentencing on the multiple bill are unavailable because of the passage of time attributable to defendant’s absence as an escapee. Thus, it is difficult to address the merits of this assignment. However, it is quite unlikely that the sentencing transcripts would have been included at the time the appeal was granted without some sort of assignment of error or designation of the record. From the absence of any such assignment of error or designation of the record we must conclude that no such error was thought to have existed, and the raising of the issue on this appeal is an afterthought arising out of the convenient disappearance of the transcripts during the time of the defendant’s illegal escape. Moreover, the record shows that the trial judge must have considered the factors set forth in LSA-C.CrJP. art. 894.1 because she was aware of the appellant’s prior conviction for being an accessory after the fact to armed robbery and because she had originally imposed the maximum sentence of five years as a first offender.
For the foregoing reasons the judgment of the trial court is affirmed.

AFFIRMED.

. The appellant cites State v. Ellzey, 496 So.2d 1090 (La.App. 4th Cir.1986) to support her claim that the multiple offender adjudication and sentence must be vacated. However, Ellzey was decided prior to Abbott and is, therefore, superseded by the later decision of the higher court Abbott.